UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 14-61273-CIV-COHN/SELTZER

NELSON RITZ,

    Plaintiff,

v.

WIPRO LIMITED CORP.,
a/k/a Wipro Limited,

    Defendant.
_____/

**ORDER OVERRULING PLAINTIFF'S DISCOVERY OBJECTIONS AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**THIS CAUSE** is before the Court on Plaintiff's Objections to Magistrate Judge's Order Entered November 18, 2014 [DE 61], Plaintiff's Objections to Order of Magistrate Judge Entered December 5, 2014 [DE 101], Defendant's Motion for Summary Judgment [DE 91], and Plaintiff's Motion to Defer Defendant's Motion for Summary Judgment and Permit Additional Discovery Pursuant to Fed. R. Civ. P. 56(d) [DE 104]. The Court has carefully reviewed these Objections and Motions, together with all related filings, and is otherwise fully advised in the premises.[1]

---

[1] Also pending are Defendant's Motion to Strike Plaintiff's Expert Designation and Report [DE 89] and Plaintiff's Motion to Strike Exhibits D.E. 45-2, pp. 7-25, and References to D.E. #62 as Set Forth in Defendant's Statement of Undisputed Material Facts in Support of Its Motion for Summary Judgment, and Supporting Affidavits, D.E. #91–95 [DE 108]. Irrespective of the matters raised in these two motions, the Court concludes that Defendant's Motion for Summary Judgment should be granted. Accordingly, both Motions to Strike will be denied as moot.

I.    **Background**

    A.    **Material Facts**[2]

Defendant Wipro Limited Corp. ("Wipro") is based in India with a principal office in New Jersey.  Wipro is a global information technology, consulting, and outsourcing company with over 150,000 employees serving nearly 1,000 clients in more than 175 cities across six continents.  One of Wipro's business models is a staff-augmentation model in which Wipro provides clients with specific skilled resources to supplement personnel from the clients' organizations.  See DE 92 (Def.'s Statement of Undisputed Material Facts in Supp. of Its Mot. for Summ. J.) at 1, ¶¶ 1-2; DE 109 (Pl.'s Resp. to Def.'s Statement of Undisputed Material Facts in Supp. of Its Mot. for Summ. J.) at 1, ¶¶ 1-2; DE 110 (Pl.'s Statement of Material Facts) at 1, ¶ 2.

In or around March 2011, Plaintiff Nelson Ritz—a white Hispanic American—began working for Wipro as a Senior Business Analyst in Jacksonville, Florida. Ritz signed an Employment Agreement ("Agreement") that governed the terms and

---

[2] In his Response to Defendant's Statement of Undisputed Material Facts [DE 109], Plaintiff claims that he can neither dispute nor agree with many of Defendant's asserted facts, because Defendant has refused to provide discovery on those issues.  As discussed further herein, the Court finds that Plaintiff's repeated objections concerning discovery are without merit.  More, in several instances, Plaintiff's Response does not address the specific facts Defendant alleges.  All material facts recited by Defendant, supported by the record, and not properly controverted by Plaintiff are deemed admitted.  See S.D. Fla. L.R. 56.1(b).

    Additionally, Plaintiff relies on a declaration that he filed two and a half months after being deposed.  See DE 110-2 at 1-8.  Certain facts set forth in the declaration conflict with Plaintiff's deposition testimony, and the Court will disregard those written statements.  See Van T. Junkins & Assocs. v. U.S. Indus., 736 F.2d 656, 657 (11th Cir. 1984) ("When a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony.").

conditions of his employment.  The Agreement provided that Ritz "may be required to work from a different Wipro office, on reasonable notice, and will be required to travel from time to time in the performance of [his] duties."  The Agreement also stated that Ritz's employment was "on an at will basis."  See DE 92 at 2-3, ¶¶ 7-9; DE 109 at 3, ¶¶ 7-9; DE 110 at 1, ¶ 1.

Prior to Ritz's employment, longtime Wipro client Citibank engaged Wipro on a staff-augmentation project spanning four continents.  This project, called the Rainbow Initiative, was a worldwide effort by Citibank to standardize and integrate its global Information Technology ("IT") systems in order to achieve maximum efficiency and cost reduction.  See DE 92 at 3, ¶¶ 10-11; DE 109 at 3, ¶¶ 10-11.

In 2011, Citibank decided to expand the Rainbow Initiative to Latin America and, consequently, requested that Wipro provide experienced personnel in that region to staff its planned expansion.  Wipro hired Ritz and others to serve as Senior Business Analysts / Core Subject Matter Experts ("SMEs") on the Latin American phase of the Rainbow Initiative.  When Ritz's employment began, Wipro immediately assigned him to the Rainbow Initiative.  Ritz performed work on the Latin American phase of the project from approximately March 2011 to January 2012.  See DE 92 at 3, ¶¶ 12-15; DE 109 at 3, ¶¶ 12-15.

Between late 2011 and January 2012, Citibank decided to adjust its global strategy and resources by scaling back the Rainbow Initiative in Latin America and continuing its focus on the Asia Pacific and Europe regions.  Because of this strategic change, Citibank no longer needed Senior Business Analysts / SMEs in the Americas.  Citibank therefore instructed Wipro to disengage all Senior Business Analysts / SMEs from Citibank's sites and operations in Latin America.  Wipro did not replace any Senior

Business Analysts / SMEs on the Rainbow Initiative in Latin America.  See DE 92 at 3-4, ¶¶ 16, 19; DE 109 at 3-4, ¶¶ 16, 19.

Citibank, however, decided to retain Wipro Business Analysts / non-SMEs at a lesser experience level and reduced billing rate, as they could handle the remaining routine tasks on the project.[3]  See DE 92 at 3-4, ¶¶ 16, 18; DE 109 at 3-4, ¶¶ 16, 18.  Ritz testified that the "only" individual he "know[s] for a fact" remained on the Rainbow Initiative "at least through 2012" was Aravamudan Rajagopalan, a Business Analyst whose work was billed to Citibank at a significantly lower rate than Ritz's.  See DE 92 at 4, ¶ 20; DE 109 at 4, ¶ 20.

After Ritz was taken off the Rainbow Initiative in January 2012, his supervisor, Rajesh Stephen, placed him in contact with the project manager for a Citibank Capital Advisors project in New York.  See DE 92 at 4, ¶ 22; DE 109 at 4, ¶ 22.  Ritz's role on that project was to analyze Citibank's IT systems and offer recommendations on alternative system providers for an entity that was being spun off and would no longer have access to the Citibank systems.  After finishing this one-month analysis in April 2012, Ritz delivered his recommendation, thereby completing his role on the project.  Ritz admitted that he was "not engaged to do anything further" and the "scope of [his] work . . . ended as had been promised."  Wipro did not replace Ritz with another employee on the Capital Advisors Project because the work he was doing had been finished.  Ritz "had no further access" to the project and does not know who worked on

---

[3] The role of a Business Analyst is distinct from that of a Senior Business Analyst / SME.  Senior Business Analysts / SMEs, like Ritz, function as high-level business consultants who design and propose solutions to influence technology implementations on a project, while Business Analysts implement the vision of the senior employees.  Business Analysts are billed and compensated at lower rates due to their different job responsibilities.  See DE 92 at 4, ¶ 18; DE 109 at 3, ¶ 18.

4

implementing his proposals or even if Citibank engaged Wipro to perform that work. The Capital Advisors project was the last billable position that Ritz had with Wipro. See DE 92 at 5, ¶¶ 23-26; DE 109 at 4-5, ¶¶ 23-26.

Between January 2012 and June 2013, Ritz applied for 47 client projects, and others submitted his credentials for more than 50 additional projects—about 103 projects in total.[4]  See DE 92 at 5, ¶ 27; DE 109 at 5, ¶ 27.  The decision about who staffs a client project remains with the individual client team and is subject to client approval.  And though Wipro may propose candidates for each position, there are multiple reasons why a position might never be filled.  Certain projects fail to materialize because the client's budgetary constraints or operational priorities change.  Even if Wipro expends significant effort in preparing for a potential engagement on a project, the client may ultimately decide to postpone or terminate the project.  Sometimes Wipro posts potential roles internally—for planning purposes and in anticipation of receiving final client approval—but the client then decides not to move forward with the project. See DE 92 at 6, ¶ 32; DE 109 at 6, ¶ 32.

On June 10, 2013, Wipro proposed Ritz for a Commodity Manager position in Sunnyvale, California.  At that point, Ritz had been non-billable for about 15 months, though he continued to receive his full pay and benefits.  The Sunnyvale project did not have a travel budget and, because it was a one-year engagement, would have required Ritz to relocate from Florida (or bear the cost of maintaining a second residence in

---

[4] Information about some of the people who filled these positions is set forth in a chart that has never been formally submitted into the record.  Wipro's motion papers reference the chart, and Ritz has moved to strike these references on various grounds.  Because Ritz has the burden to prove discriminatory acts by Wipro, but has offered no evidence of such conduct, the Court need not consider the information in the chart.

California).  See DE 92 at 6, ¶¶ 33-34; DE 109 at 6, ¶¶ 33-34; DE 92-1 (Dep. of Nelson Ritz) at 20.  Ritz rejected the position because it did not come with a travel budget.  See DE 92-1 at 18, 21.

Wipro's policy is to terminate employees who remain non-billable for 30 days or longer.  See DE 92 at 7, ¶ 40; DE 109 at 8, ¶ 40.  On June 20, 2013, Melissa George, a former Human Resources Lead with Wipro, sent Ritz the following e-mail message:

> I am from the HR team at Wipro US.  It has been brought to my notice that you are unbilled for some time.  While you and the company continue to look for other opportunities for you, we also want to let you know that we are not in a position to keep you on bench indefinitely. . . .  If you are not in a billable assignment by July 5, 2013 we would need to consider that your last date and proceed with separation. . . .

Ritz replied as follows:

> Thank you Melissa.  It has continued to surprise me that while my Indian colleagues have been assigned and kept on projects all this time, I continue to not be assigned (despite applications to many projects) and to be pulled off of projects despite great reviews from clients and managers.  Please see what you can do about that.

See DE 92 at 7-8, ¶¶ 41-42; DE 109 at 8, ¶¶ 41-42.

In response to Ritz's claim of discrimination, George attempted to schedule a time with Ritz to discuss his concerns.  Ritz, however, refused to speak with George.  See DE 92 at 8, ¶ 43; DE 109 at 8, ¶ 43.  Wipro's Human Resources Manager, Supriya Mahajan, spoke with Ritz on July 3, 2013.  During their conversation, Ritz complained that (a) Wipro's relocation policy is not realistic or workable for American citizens and (b) he believed Wipro removed him from the Rainbow Initiative project because he is American.  See DE 92 at 8, ¶ 44; DE 109 at 8, ¶ 44.  In an e-mail following their discussion, Mahajan reiterated that "[Wipro's] policies do not differ [on the] basis [of]

6

nationality and citizenship so your claim that American citizens must be treated preferentially/differently over Indian deputed employees is absolutely incorrect." DE 94-6 (Ex. F. to Decl. of Supriya Mahajan) at 2.  Mahajan further emphasized that

> your release from the [Rainbow Initiative] assignment was because the customer change[d] the scope of the project and the customer wanted BA profiles at a significantly lower billing rate.  Due to budgetary reasons, you and a few other SME's got released from the project.  However, an earlier email from you suggests your release was on grounds [of] nationality which is not correct.

Id.  On July 5, 2013, Wipro terminated Ritz's employment because he had been non-billable for almost a year and a half.  See DE 92 at 8, ¶ 45; DE 109 at 9, ¶ 45.

### B.   Procedural History

On May 30, 2014, Ritz brought this action against Wipro.  See DE 1 (Compl.). Ritz's current Amended Complaint alleges that, in its staffing of projects, Wipro unlawfully discriminated against him in favor of Indian employees.  See DE 56 at 4-5. According to Ritz, this discriminatory treatment prevented him from working and ultimately led to his termination.  See id. at 6-7, 9.  Ritz pleads claims for color and national-origin discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and the Florida Civil Rights Act of 1992 ("FCRA"), and for ethnicity and ancestry discrimination in violation of 42 U.S.C. § 1981.  See DE 56 at 5-9.  Wipro has answered the Amended Complaint, denying liability and asserting affirmative defenses. See DE 85.

During the course of the litigation, Ritz filed at least four motions to compel discovery, two of which are pertinent here.  The first is Plaintiff's Amended First Motion to Compel Discovery and for Sanctions [DE 35], which Chief Magistrate Judge Seltzer granted in part and denied in part.  See DE 54 (Order of Nov. 18, 2014) ("First

7

Discovery Order"). The second is Plaintiff's Fourth Motion to Compel Defendant to Produce Supporting Documents [DE 73], which Judge Seltzer denied. See DE 86 (Order of Dec. 5, 2014) ("Second Discovery Order"). Plaintiff filed Objections to both of Judge Seltzer's Orders, see DE 61; DE 101, and those Objections are fully briefed.

Further, Wipro moved for summary judgment on all of Ritz's claims, asserting that he has produced no evidence of illegal discrimination. See DE 91; DE 95. Ritz filed a Response opposing the Motion, and Wipro filed a Reply. See DE 115; DE 120. The parties also have submitted documentary evidence to support their arguments.

Last, Ritz filed a Motion to Defer Defendant's Motion for Summary Judgment and Permit Additional Discovery Pursuant to Fed. R. Civ. P. 56(d) [DE 104] ("Deferral Motion"). The Deferral Motion, which Wipro opposes, contends that Ritz was improperly prevented from obtaining discovery on issues raised in the Motion for Summary Judgment, and therefore that the Court should defer ruling on that Motion and allow Ritz to take further discovery to support his opposition to summary judgment.

## II. Discussion

### A. Discovery Issues

#### 1. Plaintiff's Objections

When a party objects to a magistrate judge's order on a non-dispositive matter, such as a discovery motion, a district judge must review the objections and set aside any part of the order that is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); S.D. Fla. Magistrate Judge Rules, R. 4(a)(1). In the First Discovery Order, Chief Magistrate Judge Seltzer granted Ritz's motion to compel Wipro "to produce the personnel files (excluding personal information) of Plaintiff's former supervisor, Joseph Mendel, as well as co-workers (who allegedly were

8

also subject to discrimination) Karl Burns, Kim McAfee, and Lea Blackburn." DE 54 at 3. Chief Judge Seltzer found that these materials were discoverable and rejected Wipro's "objection on privacy grounds," explaining that the files could be produced confidentially. Id.; see id. at 4 n.4.

But Judge Seltzer denied Ritz's motion to compel Wipro to produce "a myriad of information, including, but not limited to,"

> the identity of persons with knowledge regarding the "existence, custodian, location, and general description of documents referring or relating to" Defendant's hiring "and/or sponsoring visas for foreign nationals or [Defendant's] hiring of American resident aliens or citizens of South Asian decent, including both dark complected" for "individuals who worked on the Citibank Rainbow Initiative after Plaintiff's removal from the project and individuals engaged on the internal [100 plus] projects to which Plaintiff applied after his removal from the Citibank Rainbow Initiative"; "all documents which refer or relate to [Defendant's] sponsoring of any foreign nationals to work for [Defendant] on any projects, jobs, or work for which [Defendant was] engaged by third parties which were performed in or emanated from the United States of America, including, but not limited to, green cards, H-1B, B-1, or other visas and applications" for "individuals who worked on the Citibank Rainbow Initiative after Plaintiff's removal from the project and individuals engaged on the internal [100 plus] projects to which Plaintiff applied after his removal from the Citibank Rainbow Initiative"; "identity [and] national origin, color citizenship, salary, benefits, increases in salary or benefits, and current employment status" regarding "every current or former employee with the same job title or similar responsibilities as [Plaintiff], regardless of his or her geographic location or the clients . . . serviced"; "all job postings/job openings/ job descriptions for positions with [Defendant] . . . for positions in the United States . . . or for projects involving United States companies and joint ventures with United States companies . . . from the date of Plaintiff's termination of employment to present"; "all documents which refer or relate to all work done by [Defendant] for Citibank and/or Banamex, including but not limited to the Rainbow Initiative, from 2010 to present"; "all documents which refer or relate to all employees, including their national origin, color, ethnicity and/or ancestry, and immigration status who worked on all jobs, projects or work on which Plaintiff worked, and, in the case where Plaintiff was not the manager of the job, project or work, the position held by each employee including Plaintiff"; "all documents which refer or relate to all jobs, projects, or work" which are "substantially similar to the project or of the same nature as the project which Plaintiff worked" from "2011 to present"; and "all documents

9

> referring or relating to employment agreements between [Defendant] and any and all persons hired by [Defendant] for the years 2010 – present to perform the same or similar work as Plaintiff performed or held position(s) which are the same or similar to the position(s) Plaintiff held while he was in [Defendant's] employ."

DE 54 at 4-6 (footnote omitted).  Judge Seltzer emphasized that Ritz had not shown how his "extensive and far-reaching requests are relevant or reasonably calculated to lead to the discovery of admissible evidence as to the limited claims of discrimination raised in this action."  Id. at 6-7.  Further, Judge Seltzer agreed with Wipro that "compelling production of the information stemming from these overly broad requests would be unduly burdensome."  Id. at 7.  "Given the burden of producing the immense volume of requested information, coupled with its (at best) tenuous connection to the issues in this case," Judge Seltzer "decline[d] to compel the requested production."  Id. (citing Fed. R. Civ. P. 26 (b)(2)(C)(iii) (requiring the court to limit the extent of discovery if it determines that "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues")).

Chief Judge Seltzer also denied Ritz's motion to compel other written discovery, including information about the positions he had applied for while employed by Wipro, as Wipro had produced or agreed to produce responsive documents.  See DE 54 at 8.  Judge Seltzer found that Wipro's "supplemental production is sufficient and its remaining objections to additional production are well-taken."  Id.

In the Second Discovery Order, Chief Magistrate Judge Seltzer noted that Wipro had produced charts disclosing various details about the 103 positions that Ritz had applied for during his employment and the persons, if any, who had filled those roles.

10

See DE 86 at 2-3 & n.3.  More, Chief Judge Seltzer denied Ritz's motion to compel production of "extensive additional information" about these disclosures, noting that Ritz was "simply attempt[ing] to re-litigate issues previously resolved against him" in the First Discovery Order.  Id. at 3.  "Once again," Judge Seltzer observed, "Plaintiff's overly broad request creates an und[ue] burden on Defendant given the limited discrimination claim raised in this action."  Id. at 4 (citing Fed. R. Civ. P. 26(b)(2)(C)).

Having closely reviewed the First and Second Discovery Orders, Ritz's Objections, and all related filings, the Court finds that neither Order is clearly erroneous or contrary to law.  Indeed, the Court agrees with Chief Magistrate Judge Seltzer that the massive amount of additional discovery sought by Ritz is far beyond the scope of the issues in this case and would place an onerous and unjustified burden on Wipro.  See Fed. R. Civ. P. 26 (b)(2)(C)(iii).  Ritz's Objections, moreover, essentially rehash the same arguments that Judge Seltzer considered and rejected.  The Court will therefore overrule the Objections.

### 2. Plaintiff's Deferral Motion

Rule 56(d) of the Federal Rules of Civil Procedure states as follows:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition [to summary judgment], the court may:
>
> (1)   defer considering the motion or deny it;
>
> (2)   allow time to obtain affidavits or declarations or to take discovery; or
>
> (3)   issue any other appropriate order.

Fed. R. Civ. P. 56(d).  "'Because the burden on a party resisting summary judgment is not a heavy one, one must conclusively justify his entitlement to the shelter of [Rule

56(d)] by presenting specific facts explaining the inability to make a substantive response.'" Virgilio v. Ryland Group, Inc., 680 F.3d 1329, 1338 (11th Cir. 2012) (quoting SEC v. Spence & Green Chem. Co., 612 F.2d 896, 901 (5th Cir. 1980)[5]).

In his Deferral Motion, Ritz contends that "[t]he state of the record is such that [he] cannot present facts essential to justify [his] opposition" to summary judgment. DE 104 at 8. Ritz claims that the reason for this shortcoming is that he was unfairly deprived of discovery concerning other similarly situated employees whom Wipro may have treated more favorably than Ritz. Yet again, though, Ritz relies on the same arguments that Judge Seltzer rejected in the First and Second Discovery Orders and that this Court likewise found unpersuasive in overruling Ritz's Objections. More generally, the record demonstrates that Ritz had a fair opportunity to conduct discovery. That he may not have obtained the evidence he hoped for does not change this fact. Thus, Ritz's Deferral Motion will be denied.

   B.   **Motion for Summary Judgment**

      1.   **Summary Judgment Standards**

Summary judgment may be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). To satisfy

---

[5] Decisions of the former Fifth Circuit issued before October 1, 1981, are binding precedent in the Eleventh Circuit. See Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

12

this burden, the movant must demonstrate that "there is an absence of evidence to support the nonmoving party's case." Id. at 325.

If the movant makes this initial showing, the burden of production shifts, and the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The non-moving party "may not rest upon the mere allegations or denials in its pleadings" but instead must present "specific facts showing that there is a genuine issue for trial." Walker v. Darby, 911 F.2d 1573, 1576-77 (11th Cir. 1990). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3).

Essentially, so long as the non-moving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker, 911 F.2d at 1577. If the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (citations omitted).

A court's function at the summary-judgment stage is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. In so doing, the court must view the facts in the light most favorable to the non-movant and draw all reasonable inferences in that party's favor.

13

See Davis v. Williams, 451 F.3d 759, 763 (11th Cir. 2006).  The court also must discern what issues are material:  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted."  Anderson, 477 U.S. at 248.

### 2. Analysis of Defendant's Motion

Title VII makes it illegal for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).[6]  To prove a prima facie case of discrimination based on circumstantial evidence, Ritz must show that (1) he is a member of a protected class, (2) he was subjected to an adverse employment action, (3) Wipro treated similarly situated employees outside the protected class more favorably, and (4) he was qualified for the job.  See Evans v. Books–A–Million, 762 F.3d 1288, 1297 (11th Cir. 2014).  With regard to the third element, Ritz must identify "comparators" that are "similarly situated in all relevant respects."  Brown v. Ala. Dep't of Transp., 597 F.3d 1160, 1174 (11th Cir. 2010) (internal quotation marks omitted); see Evans, 762 F.3d at 1297 (holding that plaintiff failed to establish prima facie case of gender discrimination because she did not

---

[6] The Court's analysis of Ritz's Title VII claim also governs his discrimination claims under § 1981 and the FCRA.  See Brown, 597 F.3d at 1174 n.6; Wilbur v. Corr. Servs. Corp., 393 F.3d 1192, 1195 n.1 (11th Cir. 2004); Harper v. Blockbuster Entm't Corp., 139 F.3d 1385, 1387 (11th Cir. 1998).  Because the Court concludes that Wipro is entitled to summary judgment on the merits of Ritz's claims as pleaded, the Court declines to address Wipro's other arguments that those claims are barred in part by limitations and that § 1981 does not apply to the specific discrimination Ritz alleges.

14

identify any similarly situated male employees whom employer had treated differently). If Ritz can demonstrate a prima facie case, the burden of production shifts to Wipro "to articulate a legitimate, nondiscriminatory reason for its actions." Brown, 597 F.3d at 1174.  If Wipro offers such a reason, "the burden shifts back to" Ritz to show that the "stated reason was a pretext for discrimination." Crawford v. Carroll, 529 F.3d 961, 976 (11th Cir. 2008); see Brown, 597 F.3d at 1174.

Here, Wipro primarily argues that summary judgment should be granted because Ritz has identified no other employees who were similarly situated to him in all relevant respects, were not white Hispanic Americans like Ritz, and were treated more favorably. See Evans, 762 F.3d at 1297; Brown, 597 F.3d at 1174.  The Court agrees.

Ritz claims that he was removed from the Rainbow Initiative and Capital Advisors projects and that less-qualified Indian employees continued to work on those projects. See DE 56 at 4.  He also maintains that he was rejected for many other projects that were staffed by Indian workers.  See id. at 5.  But no evidence supports these claims. As discussed above in Part I.A, Ritz and other Senior Business Analysts / SMEs were removed from the Rainbow Initiative because of Citibank's change in business strategy. The employees retained on the project were Business Analysts who, though less experienced, could perform the remaining work at a lower cost.  Ritz was moved from the Capital Advisors project after he completed his work, and he does not know if anyone at Wipro was hired to implement his proposals.  Nor has Ritz offered evidence that any of the other positions he applied for were filled by less-qualified Indian employees.  Indeed, the limited information in the record appears to refute this claim. And no evidence suggests that Indian employees who were non-billable for nearly a year and a half, as Ritz was, were retained by Wipro instead of being terminated.

15

In sum, no record evidence shows that Wipro treated Ritz less favorably than similarly situated employees outside his protected class.  See Evans, 762 F.3d at 1297.  Ritz therefore cannot establish a prima facie case of discrimination.  Accordingly, Wipro's Motion for Summary Judgment will be granted.

### III.  Conclusion

For the reasons discussed, it is hereby

**ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Objections to Magistrate Judge's Order Entered November 18, 2014 [DE 61] are **OVERRULED**;

2. Plaintiff's Objections to Order of Magistrate Judge Entered December 5, 2014 [DE 101] are **OVERRULED**;

3. Plaintiff's Motion to Defer Defendant's Motion for Summary Judgment and Permit Additional Discovery Pursuant to Fed. R. Civ. P. 56(d) [DE 104] is **DENIED**;

4. Defendant's Motion for Summary Judgment [DE 91] is **GRANTED**;

5. Defendant's Motion to Strike Plaintiff's Expert Designation and Report [DE 89] and Plaintiff's Motion to Strike Exhibits D.E. 45-2, pp. 7-25, and References to D.E. #62 as Set Forth in Defendant's Statement of Undisputed Material Facts in Support of Its Motion for Summary Judgment, and Supporting Affidavits, D.E. #91–95 [DE 108] are **DENIED AS MOOT**; and

6. The Court will enter a separate Final Judgment consistent with this Order.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 26th day of February, 2015.

_____
JAMES I. COHN
United States District Judge

Copies provided to:

Counsel of record via CM/ECF